**UNITED STATES DEPARTMENT OF LABOR**
**OSHA REGION 5**

RECEIVED
DEC 16 2014
IHBRR - LAW DEPARTMENT

| | | |
|---|---|---|
| David Bish and Peter Woznicki, | ) | |
| | ) | |
| Complainants, | ) | |
| | ) | |
| v. | ) | OSHA CASE NO. ____________ |
| | ) | |
| Indiana Harbor Belt Railroad. Co., | ) | |
| | ) | |
| Respondent. | ) | |

**COMPLAINT UNDER §20109 OF THE FEDERAL RAIL SAFETY ACT**

1. This administrative action is brought under 49 U.S.C. §20109 for damages and other relief against Respondent Indiana Harbor Belt Railroad, Co. ("IHB"). The action is based on IHB's dismissal of Complainant David Bish and Complainant Peter Woznicki in violation of Section 20109.

**Parties**

2. Complainant Bish resides at 273 Heather Lane, Hobart, Indiana, 46342. His telephone number is (219) 465-8881.

3. Complainant Woznicki resides at 9484 Madison Place, Crown Point, Indiana, 46307. His telephone number is (219) 789-7066.

4. IHB is a common carrier by rail. It is the largest switch carrier in the United States, operating mostly in the Midwest in and around Northwest Indiana and the Chicago metro area.

**Factual Allegations**



EXHIBIT
tabbies
7

5. Bish was hired by IHB in March 2008 as a trackman. Bish filed a previous 20109 Complaint with OSHA against IHB (OSHA Case No. 5-1260-11-025) that subsequently proceeded to the United States District Court for the Northern District of Illinois (Case No. 13-CV-00199). Bish and IHB settled the previous complaint on or around January 13, 2014.

6. Woznicki was hired by IHB in March 2005 as a trackman.

7. On June 12, 2014, Bish and Woznicki were on the same gang working Track 7 in the Blue Island Yard. Woznicki worked the track beginning in the morning, and Bish joined the gang after lunch.

8. Woznicki rode over to the Blue Island Yard with Foreman Jerry Perkins. According to IHB, Woznicki and Perkins argued on the ride over, and at 10:30 a.m., Woznicki threatened Perkins, saying "I know where you live. I will kick your ass." Despite the alleged threat, IHB took no immediate action against Woznicki.

9. Woznicki denies arguing with Perkins on the ride over, and denies ever making any threats to Perkins.

10. Instead, Woznicki went about his job after arriving on the job site until he and another trackman found problems with the track protection.

11. Woznicki raised the safety concerns with Perkins, at which point Perkins began arguing with Woznicki.

12. Woznicki was concerned because the track was not protected, and as such, the crew could be injured or killed if a train came through.

13. In response to Woznicki's safety concern, Perkins replied, "If a train comes, I'll throw you over my shoulder."

14. Later that day, around 12:30 p.m., Bish was walking the track doing work for

Foreman Miguel Garcia. Perkins told Bish to stop his work for Garcia and instead, help Perkins and his crew spike the track.

15. Bish initially declined to stop his work for Garcia, not wanting to disobey his previous order. But Perkins assured Bish that he would not get in trouble with Garcia, so Bish picked up a spiking gun and began to assist Perkins.

16. The other members of Perkins' gang— , and —decided to take a water break. It was 80 degrees that day and IHB instructed employees—through job briefings and other written postings—to stay hydrated while working.

17. retrieved water for himself, Woznicki, and but not for Bish. Seeing that Bish did not have any water, told Bish that it was time for a water break.

18. Bish put down the spiking gun and walked towards the water cooler that was about 50 feet away from where he was working.

19. Perkins began yelling at Bish—and no one else—to return to work, calling Bish a "dickhead." Bish asked if he could finish his water before returning to work and Perkins said "no."

20. Woznicki commented to Perkins that Perkins was preventing Bish from taking a water break.

21. Bish pulled a pen and piece of paper out of his pocket to document that Perkins was refusing him a water break.

22. Perkins again yelled at Bish and told him that if he did not pick up the spiking gun immediately, Bish would be charged with insubordination.

23. But before Bish could pick up the spiking gun and return to work, Perkins called over Assistant Supervisor Eric Ritter and told Ritter that Bish was refusing a direct order to

return to work.

24. Ritter took Bish to the office for an interview about the incident with David Flores, Supervisor of Blue Track Island Department. Both Ritter and Flores expressed surprise at the insubordination allegations directed at Bish, as both regarded Bish to be quiet and not a trouble maker.

25. Woznicki was subsequently brought to the office and also asked about the incident between Bish and Perkins.

26. Bish denied disobeying a direct order to return to work, and Woznicki corroborated Bish's statement.

27. After a brief call with Victor Reyes, Manager of Track Management and Production, about the incident, IHB took Bish and Woznicki out of service.

28. The next day, Bish and Woznicki received formal notices of investigation and removal of service. Bish was charged with disobeying a direct order to return to work – an alleged violation of NORAC General Rule D—Employee Conduct. Woznicki was charged with threatening Perkins with physical harm – also an alleged violation of General Rule D.

29. IHB conducted an investigation hearing of both Bish and Woznicki on June 18, 2014.

30. IHB determined that Bish had, indeed, disobeyed a direct order to return to work and in a written Notice of Discipline dated June 24, 2014, IHB terminated Bish.

31. Similarly, IHB determined that Woznicki did threaten Perkins with physical harm and in a written Notice of Discipline dated June 25, 2014, IHB terminated Woznicki.

32. On July 9, 2014, Bish and Woznicki appealed their terminations. IHB denied both appeals on July 12, 2014.

**Cause of Action under the FRSA**

1. The facts pled above state a cause of action because railroads are prohibited by the Federal Rail Safety Act, 49 U.S.C. §20109, and by regulations enacted pursuant to the authority granted to the Secretary of Labor appearing in 49 C.F.R, Part 1982, *Interim Rules Federal Register* 76: 68084-68097 (11/3/2011), from discharging, demoting, suspending, reprimanding, or otherwise discriminating against an employee for:

- provid[ing] information, directly caus[ing] information to be provided, or otherwise directly assist[ing] in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security . . . . (§20109 (a)(1)(C));
- fil[ing] a complaint, or directly caus[ing] to be brought a proceeding related to the enforcement of [Section 20109].... (§20109 (a)(3));
- reporting, in good faith, a hazardous safety or security condition. (§20109 (b)(1)(A)); and
- refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties. (§20109 (b)(1)(B)).

2. In violation of §20109 (a)(3), IHB disciplined and terminated Bish because of his previous OSHA complaint and lawsuit against IHB, not because Bish disobeyed a direct order. Bish was singled out for no other reason than his previous protected conduct, and no one else was charged with failing to return to work, despite that Bish was one of four on the gang that was on a water break. Further, IHB's conduct violated §20109 (b)(1)(B), as working without proper hydration is a hazardous safety or security condition, and Bish was entitled to refuse to return to work until he had properly hydrated himself.

3. IHB's discipline and termination of Woznicki violated §20109 (a)(1)(C).

Although IHB allegedly terminated Woznicki for threatening Perkins with physical harm, IHB took no action against Woznicki for the alleged threats and did not suspend and discipline Woznicki until after he provided information to his supervisor as part of IHB's investigation of Bish. Simply put, Woznicki engaged in protected activity by telling the truth regarding Bish, and IHB did not like that Woznicki corroborated Bish's version of the events, so IHB fired Woznicki. Additionally, IHB's conduct violated §20109 (b)(1)(A) because IHB took Woznicki out of service just hours after he made his good faith complaint about a hazardous safety or security condition regarding track safety, and he was notified the next day that he would be investigated – an investigation that resulted in his termination.

4. IHB's conduct in this matter is not isolated but is part of a company-wide retaliatory scheme against those engaged in protected activity.

**Request for Relief**

1. *DOL/OSHA Investigation.* Complainants request that DOL/OSHA conduct a full investigation into the incident described above and into IHB's system-wide retaliatory conduct against those engaging in protected activity under 49 U.S.C. §20109.

2. *Compensatory and Punitive Damages.* Complainants request that DOL/OSHA order IHB to pay all compensatory and punitive damages available under 49 U.S.C. §20109, including back pay, front pay, and other lost wages.

3. *Attorney's Fees.* Complainants request DOL/OSHA to order IHB to pay their reasonable attorney's fees and costs pursuant to 49 U.S.C. §20109.

4. *Other Relief.* Complainants request that DOL/OSHA order all other relief appropriate under the circumstances.

DATED: Nov. 20, 2014

**NICHOLS KASTER, PLLP**

James H. Kaster (MN #53946)
Jason Hungerford (MN #0395908)
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
TELEPHONE: (651) 256-3200
FACSIMILE: (651) 215-6870
kaster@nka.com
jhungerford@nka.com

ATTORNEYS FOR COMPLAINANTS