Page 61

BY MR. THOMPSON:
Q I'll represent to you that some railroads' bonus structure is based, at least in part, on injury rates or lost days due to injury.
Do injuries in any way affect your bonus amount?
A **Absolutely.**
Q Explain that to me.
A **The injuries -- There's a formula of not the amount of injuries, but the severity of the injury. Other than that, you would have to ask the accounting people.**
Q When you say "the severity of the injury," are you referring to the FRA lost -- I'm going to mess up the term, I'm sure, but the number of lost days that have to be reported to the FRA?
A **No --**
MS. KANDYBA: Are you asking him whether or not that element is a component of the formula for determining the amount of the bonus?
MR. THOMPSON: It's a poor question. I'm going to strike it and ask a different one.
BY MR. THOMPSON:
Q When you say a component of the formula for your bonus is the severity of injury, what do you mean

Page 62

by "the severe of the injury"?
A **The monetary amount.**
Q What do you mean by that?
A **Days lost, lawsuits. Like I said, other than that, you'd have to ask the accounting people because I don't know how they calculate the actual formula.**
Q Have you ever seen a document showing the formula?
A **No.**
Q How do you know this formula exists?
A **Word of mouth.**
Q Do you remember anybody in particular telling you about this formula?
A **No, other than the discussion at the board of directors meetings.**
Q What conversation at the board of directors meetings?
A **Well, it was how --**
MS. KANDYBA: And, again, what conversations at the board of directors meeting was the question. I object to that question on the basis of form.
BY MR. THOMPSON:
Q To what conversation are you referring?
A **Just approval for the bonus.**
Q Understood.
Do you know what percentage of your bonus is

Page 63

affected in some way by injuries?
A **20 percent.**
MS. KANDYBA: Wait. The answer is 20 percent?
THE WITNESS: 20 percent.
And, again, I'm going to object to the question on the basis that it is -- on the basis of form, on the basis of foundation, and also on the basis that it is vague and calls for speculation.
BY MR. THOMPSON:
Q Going back to the car cornering incident involving Mr. King, did you ever look at any damage estimates?
A **No.**
MR. THOMPSON: Let's mark this portion confidential.
(Whereupon, the following proceedings were deemed confidential.)
BY MR. THOMPSON:
Q Have you ever been disciplined by IHB?
A **Me, personally?**
Q Yes, sir.
A **No.**
Q Are you aware of any complaints of misconduct having been alleged against you by employees?

Page 64

MS. KANDYBA: Okay. Again, I'm going to object on the basis of foundation, and I'm going to also object on the basis that your question is incomplete in that it doesn't define "employees." He's had a 44-year history in the railroad industry at a number of different companies.
BY MR. THOMPSON:
Q You can go ahead and answer.
A **Would you repeat that, please?**
MR. THOMPSON: Would you read back my question, please -- Actually, strike it. I think I do want to limit it to IHB. That's a good point.
BY MR. THOMPSON:
Q During your time at IHB, are you aware of any employees ever alleging misconduct against you personally?
MS. KANDYBA: All right. And would that include the Truschka, Truschka, and Berg that was disclosed at the outset of this deposition where he was named as a respondent? Are we including that?
BY MR. THOMPSON:
Q Any allegations you're aware of where you were personally alleged with misconduct?
A **Not that I'm aware of.**
Q And I understand from your attorney there may be a



EXHIBIT
tabbies
8