UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAVID BISH and )
PETER WOZNICKI, )
    Plaintiffs, )
)
    v. ) CAUSE NO.: 2:15-CV-262-JD-JEM
)
INDIANA HARBOR BELT RAILROAD, )
    Defendant. )

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel [DE 26], filed on July 12, 2016. Plaintiffs do not plainly state whom they would like the Court to compel or what they would like the Court to compel that person(s) to do, but the only reasonable interpretation of the motion is that Plaintiffs want the Court to compel two non-party witnesses to answer certain questions during their deposition testimony. Defendant has responded based on that interpretation, and Plaintiffs have replied.

**I.    Background**

Plaintiffs worked for Defendant, a railroad company, until they were fired in 2014. They then sued, alleging that Defendant fired them for engaging in activity protected by the Federal Railroad Safety Act, or FRSA.

Plaintiffs sought to learn during discovery: (1) whether their supervisors had a financial motivation to retaliate against employees who participated in FRSA-protected activity; and (2) whether their supervisors have a history of acting on such a motivation.

To that end, Plaintiffs deposed Defendant's general manager, Pat Daly, and sought to ask Daly questions about how his compensation is affected by employees' engaging in FRSA-protected

activity. Plaintiffs also deposed their former supervisor David Flores and asked Flores whether he had ever been disciplined—an effort, Plaintiffs say, to determine whether Flores was ever disciplined for retaliating against employees who engaged in FRSA-protected activity.

Daly and Flores declined to answer those questions, and Plaintiffs now seek an order compelling them to answer. Defendants oppose the motion to compel, argue that Plaintiffs are engaged in a "fishing expedition," and ask for a protective order.

## II. Analysis

A party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broad: relevant information "need not be admissible in evidence to be discoverable." *Id*. And courts construe relevancy "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

But while the scope of permissible discovery is broad, it is not unlimited. The discovery rules "were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014). "[I]rrelevant questions . . . may unnecessarily touch sensitive areas or go beyond reasonable limits," in which case "refusing to answer may be justified." *Eggleston v. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 903 (7th Cir. 1981).

If a witness does refuse to answer a question during a deposition, the asking party may seek an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B)(i). The objecting party bears the burden of showing why the request is improper. *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670

(N.D. Ind. 2008).

In ruling on a motion to compel discovery, the Court has broad discretion. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Before restricting discovery, the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Id*. (quotation omitted). Particularly in the context of nonparty discovery, the Court should protect witnesses from harassment and from disclosure of confidential information. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *Barr v. Illinois Co.*, No. 84-2076, 1986 U.S. Dist. LEXIS 30896, *3 (N.D. Ill. Jan. 2, 1986).

### A.     Compensation

Defendant's general manager, Pat Daly, declined to answer questions from Plaintiffs' lawyer about his compensation structure as it relates to the amount of FRSA-protected activity occurring on his watch. Plaintiffs ask the Court to compel these answers so Plaintiffs can learn whether Defendant's compensation structure motivates supervisors to suppress FRSA-protected activity. If Daly's compensation is affected by the amount of FRSA-protected activity that takes place on his watch, Plaintiffs say, then that information is relevant to show that Daly had a motive to suppress FRSA-protected activity.

The Court agrees with Plaintiffs that information regarding Daly's compensation structure could be relevant to Plaintiffs' claims. For example, if Daly's bonus is based on low numbers of FRSA-reportable injuries, that information could be relevant to show that Daly had a motive to retaliate against employees who declined to underplay the nature of their injuries. *E.g., Hayes v. Compass Group USA, Inc.*, 202 F.R.D. 363, 365 (D. Conn. 2001) ("With respect to [the deponent's]

salary and bonus compensation structure, to the extent that his compensation gives him an incentive to evaluate his subordinates on the performance of their accounts, it could be relevant to a claim of discrimination.").

Defendant argues that Plaintiffs have not alleged any injury in this case, so the manner in which injuries affect a manager's compensation is irrelevant. But Plaintiffs *have* alleged that Bish became a "marked man" after he filed a FRSA complaint against Defendant in 2013, and that his 2014 termination is a continuation of that discrimination. So whether and to what extent Daly has a financial incentive to discipline employees who engage in FRSA-protected activity—injury-related or not—could be relevant to Plaintiffs' claims.

Defendant also argues that information about Daly's compensation structure is irrelevant because Daly himself is not alleged to have discriminated against Plaintiffs. But Daly is Defendant's general manager, and he testified that all of Defendant's employees ultimately report to him, whether directly or indirectly. *E.g.*, Daly Dep. at 8 ("Q: How many employees indirectly report to you? A: There's a total of 673 employees . . . at this time. Q: At the end of the day, they all report to you, ultimately? A: I'm it. I'm the guy."). Further, Defendants asserted in their response to Plaintiffs' Interrogatories that Daly was involved in the decision to fire Plaintiffs. *See* Defendant's Answers to Plaintiffs' Interrogatories, at 2 ("Rick Grover, IHB's Chief Engineer, and Pat Daly, IHB's General Manager, were involved in the decision to terminate Plaintiffs.").

Defendant also notes that its counsel offered to produce—and then did produce—Defendant's bonus formula to the extent it is based on injuries. But Plaintiffs say this formula is insufficient because it does not reveal what percentage of Daly's income his bonus comprises, and Defendant has not demonstrated that the formula alone satisfies Plaintiffs' request. *See McGrath*, 625 F. Supp.

4

2d at 670 (party objecting to discovery request bears burden of showing why request is improper).

In sum, considering the totality of the circumstances, the Court finds that the value of the information Plaintiffs seek outweighs the burden of providing it. Daly must answer questions regarding his compensation structure as it relates to FRSA-protected activity occurring on his watch.

**B.      Discipline**

Plaintiffs' lawyer asked Plaintiffs' former supervisor, David Flores, if he has ever been disciplined by Defendant. *See* Flores Dep. at 41 ("Have you been disciplined by [Defendant] in the past?"). Flores declined to answer. The question could lead to the discovery of admissible evidence, because the answer could reveal previous instances of discrimination similar to the discrimination alleged here. For example, Flores's answer could show either (a) that Flores has been disciplined for retaliating against employees who engaged in FRSA-protected activity; or (b) that Flores himself has been disciplined for engaging in FRSA-protected activity. Indeed, in an earlier deposition, another supervisor, Eric Ritter, testified that he had filed an OSHA complaint against Defendant alleging that he had been disciplined for failing to misreport an injury.

In light of this, the Court finds that the value of information relating to Flores's disciplinary history—as it relates to FRSA-protected activity, not his disciplinary history in general—outweighs the burden of providing it.

Plaintiffs argue that the Court should compel Flores to answer questions about his disciplinary history in general, because courts commonly find that personnel files of supervisors alleged to be directly involved in termination decisions are discoverable, and allowing Plaintiffs to question Flores about his disciplinary history in general would be *less* invasive than allowing Plaintiffs to review his entire personnel file. *See Modjeska v. UPS*, No. 12-1020, 2014 U.S. Dist.

LEXIS 84212, *8 (E.D. Wisc. June 19, 2014) (collecting cases); *McCowan v. Educ. Servs. of Am.*, No. 08-55, 2009 U.S. Dist. LEXIS 86045, *9 (N.D. Ind. Sept. 21, 2009) (defendant's employee's "performance evaluations may lead to the discovery of admissible evidence concerning whether [she] was ever counseled for any discriminatory conduct" like that alleged by plaintiff); *Jones v. Hamilton County Sheriff's Dep't*, No. 02-808, 2003 U.S. Dist. LEXIS 10100, *21 (S.D. Ind. June 12, 2003) (allowing discovery of personnel files of defendants who allegedly played roles in plaintiff's termination).

But the evidence before the Court does not support the conclusion that Flores was *directly* involved in the decision to terminate Plaintiffs. Plaintiffs' Complaint does not allege that Flores was involved at all in the decision to terminate Plaintiffs, and Flores himself testified that he had no role in the decision. *See* Flores Dep. at 10 ("Q: Did you have any role in the decision to charge Mr. Bish with a workplace rule violation as a result of the incident on July 12th of 2014? A: No.").

Plaintiffs argue that Flores chose to "escalate" Plaintiffs' discipline up the chain of command after interviewing them. But the deposition transcripts provided to the Court do not support this view. Flores did testify that he "may or may not" give input to his superiors on whether he thinks an employee should be disciplined, depending on the circumstances. *See* Flores Dep. at 9-10. But on the record before the Court, the most the Court can find is that Flores was briefly involved in Defendant's initial investigation into Plaintiffs' supposed wrongdoing. So the Court cannot find that Flores was directly involved in the decision to terminate Plaintiffs such that discovery into Flores's full disciplinary history is warranted.

At the same time, the Court cannot find that Flores was *so* far removed from Plaintiffs' discipline that information about Flores's disciplinary history with respect to FRSA-protected

6

activity would be irrelevant. So Flores must answer questions about his disciplinary history as it relates to FRSA-protected activity, but he need not answer questions about his disciplinary history in general. This will allow Plaintiffs to obtain relevant discovery without allowing Plaintiffs to probe into irrelevant matters. *See* Order, *Henman v. Indiana Harbor Belt Railroad Company*, No. 2:14-cv-434, DE 36 (N.D. Ind. Oct. 22, 2015) (Martin, J.) (denying motion to compel answers from nonparty witness regarding disciplinary history) ("Questions of employer discipline for events other than those related to the occurrence [at issue] are not relevant to any claim or defense in this case . . .").

### III.    Conclusion

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Compel [DE 26]. The Court **ORDERS** Pat Daly to answer questions relating to how his compensation is or is not affected by the number of injuries that occur under his watch or by any other FRSA-protected activity. The Court **ORDERS** David Flores to answer questions about his disciplinary history with respect to FRSA-protected activity, but Flores need not testify about his disciplinary history in general.

Because non-expert discovery closed on October 28, 2016, *see* DE 16, the Court **ORDERS** that the deadline for non-expert discovery be **extended** to **December 2, 2016**, for the limited purpose of concluding Pat Daly's and David Flores's depositions.

Because the Court largely grants Plaintiffs' requested relief, the Court **DENIES** the request for a protective order made in Defendant's Response to Plaintiffs' Motion to Compel and for a Protective Order [DE 31].

The Court declines to consider awarding fees under Federal Rule of Civil Procedure 37(a)(5), on the ground that such an award would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii). Plaintiffs' counsel
7

did not attempt to confer with Defendant's counsel again after the depositions ended—Plaintiffs' counsel merely argued with Defendant's counsel during the depositions—and after the depositions Defendant's counsel made efforts to resolve the compensation dispute without motion practice by offering to produce Defendant's bonus formula. *See* DE 26-1, Plaintiffs' Meet-and-Confer Statement on Motion to Compel; DE 32, Defendant's Local Rule 37-1 Certification. Plaintiffs argue that Defendant's continued opposition to their motion reveals that it would have been pointless to try to confer after the depositions, but the point of meeting and conferring is to *determine* whether the parties can resolve the issue without the Court's intervention. A party should not file without conferring and then claim that the opposing party's opposition justifies the failure to confer.

SO ORDERED this 14th day of November, 2016.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record